UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDI and VOLKSWAGEN OF
AMERICA, INC.,                               Case No. 04-70626

       Plaintiffs,

v.                                                       District Judge Victoria A. Roberts
                                                     Magistrate Judge R. Steven Whalen

SHOKAN COACHWORKS, INC.,
and JOHN SMITH,

       Defendants.

_____/

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Before the Court is Plaintiffs' Motion to Enforce Settlement Agreement [Docket #23], which has been referred for hearing and determination pursuant to 28 U.S.C. §636(b)(1)(A). For the reasons set forth below, the Motion will be DENIED.

**I.    FACTUAL BACKGROUND**

This is a trademark infringement case in which Plaintiff Audi AG claims infringement and dilution by Defendants, as well as false designation, false advertising and cyberpiracy. There have been lengthy settlement discussion between the parties, dating to at least an April 29, 2005 meeting in New York City. A settlement was not reached on that date, but in the months following that meeting, various drafts of a settlement agreement were sent back and

forth between the parties, with changes discussed and proposed.

Oral argument was held on this Motion on September 8, 2006, with all parties agreeing that the Motion could be decided based on their exhibits. However, because of an apparent conflict between the affidavit of Matthew C. Wagner, one of Defendants' attorneys, and the statements of Gregory D. Phillips, one of Plaintiffs' attorneys, the Court conducted an evidentiary hearing on September 25, 2006, at which both Mr. Wagner and Mr. Phillips testified.

The parties are in agreement as to certain facts. They agree that on October 12, 2005, Plaintiffs' counsel sent Mr. Wagner a proposed settlement agreement. The terms of that proposal were not completely satisfactory to the Plaintiff. A telephone discussion ensued on November 28, 2005, at approximately 4:15 p.m., regarding this proposal, and additional and/or different terms were discussed. Plaintiff's Exhibit 1, Mr. Phillips billing records, indicate as follows regarding this conversation of November 28th:

> "Telephone call from opposing counsel re settlement issues and revisions to License Agreement; revising, editing, and proofreading of License Agreement; drafting, redrafting, revising, editing, and proofreading of Stipulation of Dismissal; drafting of correspondence to opposing counsel and Ed Cutlipp re settlement issues; review correspondence from Ed Cutlipp re same and contacting Judge Tarnow."

At 6:15 p.m. on November 28, 2005, Mr. Phillips emailed to Mr. Wagner, as attachments, a proposed License/Settlement Agreement and a Notice of Dismissal Without Prejudice. The text of Mr. Phillips' email, submitted as Plaintiffs' Exhibit 4, reads as follows:

> "Pursuant to our telephone conversation today please find attached two documents.
>
> The first document is the License/Settlement Agreement. Please attach the website in color as Exhibit A, have your client execute the Agreement, and overnight it to me for signature by Audi AG and Volkswagen of America.
>
> Please also find attached a Notice of Dismissal Without Prejudice.
>
> Once your client has executed the License/Settlement Agreement, please let us know so that Mark Schneider and Ed Cutlip can sign the Notice of Dismissal and file it with the Court.
>
> Ed, will you be so kind as to call Judge Tarnow's chambers tomorrow and let them know that the matter has settled, can be taken off the calendar for this Thursday, and that the parties will shortly file a Notice of Dismissal."

It is at this point that the claims of the parties diverge. Plaintiffs claim that during their November 28th telephone conference, Mr. Phillips and Mr. Wagner came to a firm agreement to settle the case by making certain changes to the October 12th proposal. Mr. Phillips testified at the hearing that Mr. Wagner told him that if certain changes were made, his client would agree to settle. Mr. Phillips testified that the changes were made, and he sent the agreement to Mr. Wagner at 6:15 p.m. via email, with the understanding that the matter was settled, and that a December 1, 2005 status conference with Judge Tarnow could therefore be cancelled. Mr. Phillips testified that he did not receive a written response from Mr. Wagner, either by letter or email, indicating that the Settlement Agreement sent on November 28th was unsatisfactory to the Defendants. Rather, Mr. Phillips states, he received a telephone call from Mr. Phillips on December 15, 2005, in which Mr. Phillips expressed regret and embarrassment because his client would not sign the Settlement Agreement. In

an email dated December 15, 2005, from Mr. Phillips to co-counsel Edward Cutlip (included with Plaintiffs' Exhibit 4), Mr. Wagner characterizes the conversation as follows:

> "I just received a telephone call from Matt Wagner that he says he regretted making. He says that despite our having agreed to a settlement agreement, his client will not sign it."

Mr. Wagner states in his Declaration, and also testified, that in his telephone conversation of November 28, 2005, he told Mr. Phillips that the October 12th proposal was unsatisfactory, but that they discussed changes that would be acceptable to the Defendants. Mr. Wagner testified that he did not see Mr. Phillips' November 28th email, with the attached agreement, until some days later, and that the proposed agreement contained terms that had not been agreed to during the telephone conversation. He testified that he did not protest or respond in writing, because in his view, this was simply another of several proposals containing unacceptable terms, and no immediate response was required. As examples of terms that his clients would never accept, Mr. Wagner pointed to ¶2(A) of the proposed agreement (attached to his Declaration as Exhibit 14), dictating the small type-size of the "800-ALL AUDI" telephone number, relative to the use of the term "SHOKAN" in print advertising. He refers to an email he sent to Mr. Phillips on August 9, 2005 (*see* Exhibit 7 of the Wagner Declaration), in which he states:

> "If you mean that if 800-All AUDI is in 10 point then the digits must be in 40 point, we have no deal - we'll take our chances with 25 years worth of use and our 1991 agreement. This is not what we agreed to and is ridiculous-just plain ridiculous. I think you are confusing something (I am giving you the benefit of the doubt here, and an opportunity to retract without comment...).
>
> "The sizing vis a vis the numbers and vanity was to be EQUAL (so that no

special attention would be drawn to the vanity); the relationship I was addressing in my voice mail concerned that between the unit of digits/vanity with respect to the SHOKAN logo (that AUDI demanded and we agreed to in the meeting). Greg, think about what you are saying here, and let me know."

In addition, Mr. Wagner stated that the agreement that Plaintiffs seek to enforce contains a non-assignment clause (Agreement, ¶2(E)) that would preclude his client from transferring ownership or operation to his son, as he plans to do. He states that neither he nor his clients would have agreed to that provision.

Mr. Wagner testified, and stated in his Declaration, that he agreed to take the matter off of Judge Tarnow's calendar not because a settlement was reached, but only as a matter of having no objection to Plaintiffs' request to cancelling the status conference. As to the December 15, 2005 telephone call, recounted in Plaintiff's Exhibit 4, Mr. Wagner testified, and stated in ¶39 of his Declaration:

> "I flatly dispute that as argued by Plaintiffs' counsel that I ever said 'this is one of the most embarrassing calls that I have made in my career but for reasons that I cannot disclose to you, my clients are balking at executing the settlement agreement.' I never made this statement. I recall telling Plaintiffs' counsel that Defendants refused to sign the agreement as noted above and using the word 'embarrassed' because my client also instructed me to communicated (sic) to Plaintiffs' counsel that they were no longer interesting (sic) in negotiating with Plaintiffs at all."

Mr. Wagner states that he "never communicated Defendants' assent to any settlement draft proposed by Plaintiffs." Wagner Declaration, ¶40.

## II.   LEGAL PRINCIPLES

This Court has the equitable power to enforce a settlement agreement, *Brock v.*

*Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir.1988), but that remedy is restricted to cases where there is no dispute or ambiguity as to either the entry into, or the terms of the agreement. *Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir.1973). Indeed, "summary proceedings may result in inequities when ... such a dispute does exist." *Id*. Thus, "[b]efore enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock,* 841 F.2d at 154. *See also Therma-Scan, Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419 -420 (6th Cir. 2000). An oral agreement to settle may be enforceable, but only when "parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing...." *Re/Max International, Inc. V. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001). Even where there is a written memorialization, or where an agreement is placed o the record, however, it may not be enforceable if there is still ambiguity or uncertainty as to the parties' mutual understanding of all material terms. *Therma-Scan, supra*; *Brock, supra*. Enforceability of an alleged settlement agreement is analyzed under principles of contract law, and "[p]art of [the] threshold interpretation is the question of whether the terms of the...contract are ambiguous." *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2nd Cir. 2000). The grant or denial of a motion to enforce a settlement agreement is entrusted to the court's discretion. *Re/Max International, supra.*

## IV.   ANALYSIS

Plaintiffs concede that there is no written settlement agreement that has been signed by the Defendants, but argue that the Defendants' attorney, Mr. Wagner, objectively

manifested the intent to be bound by the agreement.

The crucial moment was the November 28, 2005 telephone conversation between Mr. Phillips and Mr. Wagner, with both conceding that settlement terms and changes to the October 12th proposal were at least discussed at that time. Mr. Phillips claims that the Agreement he emailed on November 28th reflected all the changes and terms that Mr. Wagner clearly and unambiguously agreed to. Mr. Wagner claims that he did discuss changes, but that the emailed Agreement contained terms that he did not agree to.

In what the attorneys at oral argument characterized as a "he said, she said" situation, it is apparent that to grant the Plaintiffs' motion–that is, to find that the parties agreed to all material terms of the emailed Agreement–would require finding that Mr. Wagner is a liar. Having read Mr. Wagner's Declaration and listened to his testimony, the Court is not inclined to make that finding. Nor, conversely, is the Court disposed to find prevarication on Mr. Phillips' part.

Rather, the facts of this case suggest mutual confusion and misunderstanding between Messrs. Phillips and Wagner, with each drawing different conclusions from their November 28th conversation. That conversation was held in the context of settlement discussions that took place over a period of many months, with numerous iterations of settlement proposals being sent back and forth. Indeed, Mr. Wagner's August 9, 2005 email to Mr. Phillips reflects a misunderstanding analogous to the present one, with Mr. Wagner accusing Mr. Phillips of including a term that he clearly did not agree to. Interestingly, that term–regarding the type-size of a 1-800 number–was labeled a deal-breaker by the

Defendants, yet appears again in the proposed Agreement that is the subject of this Motion. In addition, the proposed Agreement of November 28th contains a term that would arguably interfere with Defendant Smith's ability to easily transfer ownership to his son. Mr. Wagner vehemently denies that he or his client would ever have agreed to this condition.

The starkly different meanings that the two attorneys draw from their November 28th conversation suggest that "their subsequent dispute makes clear that each heard only what it wanted to hear." *Therma-Scan, supra*, 217 F.3d at 420. Again, in order for this Court to enforce a settlement agreement, there must be no dispute or ambiguity as to the terms, lest enforcement lead to inequities. *Kukla, supra*. The Court must have a measure of confidence and certainty that the parties have in fact share a meeting of the minds as to all material terms. The exhibits and testimony in this case show nothing but ambiguity and uncertainty.

## V.   CONCLUSION

"Before enforcing settlement, the district court must conclude that agreement has been reached on all material terms." *Brock, supra*, 841 F.2d at 154. The Plaintiffs have failed to convince this Court that such agreement was reached on November 28, 2005 or at any time thereafter. Accordingly, Plaintiffs' Motion to Enforce Settlement Agreement [Docket #2] is DENIED

SO ORDERED.


S/R. Steven Whalen
R. STEVEN WHALEN

UNITED STATES MAGISTRATE JUDGE

Dated:  September 28, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 28, 2006.

<u>S/Gina Wilson</u>
Judicial Assistant